# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

LAUREL C. LONGORIA,

         Plaintiff,

   v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

         Defendant.

_____/

Case No. 1:18-cv-00409-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.  INTRODUCTION

On March 26, 2018, Plaintiff Laurel C. Longoria ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1]  The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8,9.)

## II.     BACKGROUND

Plaintiff was born on July 9, 1963, completed high school and two years of college, and previously worked as a cashier at a gas station and fast food restaurants. (Administrative Record ("AR") 21, 31, 45, 62, 74–75, 159–67, 177–83.)  On September 24, 2013, Plaintiff filed claims for DIB and SSI payments, alleging she became disabled on October 29, 2009, due to carpal tunnel syndrome; severe obesity, chronic back pain, multiple joint osteoarthritic pain, plantar flattening, depression, mental and learning problems, rectal cancer, and scoliosis. (AR 14–15, 17, 52–53, 64, 77, 151, 189.)

### A.     Relevant Medical Evidence[2]

#### 1.     Consultative Examiner Theodore Georgis, Jr., M.D.

On June 20, 2014, Dr. Georgis performed an orthopedic consultation at the request of the Department of Social Services. (AR 265–69.)  Plaintiff complained of "constant" pain in her neck, lower back, chest, left shoulder, elbows, wrists, hands, hips, knees, ankles, and feet. (AR 265.)

Dr. Georgis noted Plaintiff had difficulty bending and initially walked with a short, choppy gait, which normalized. (AR 266.)  Her lumbar spine had some limitation in range of motion, but no tenderness. (AR 266.)  The range of motion in Plaintiff's cervical spine was within normal limits. (AR 266.)  Dr. Georgis's examination of Plaintiff's upper and lower extremities showed normal range of motion. (AR 267.)  Plaintiff had normal hand grip strength and normal motor strength. (AR 268.)

Dr. Georgis diagnosed Plaintiff with "[o]steoarthritis by history, with multiple joint pain complaints" and "[s]tatus post bilateral carpal tunnel release." (AR 292.)  He opined that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and walk six hours our of an eight-hour day with normal breaks, can sit six hours in an eight-hour day, and can perform occasional climbing, stooping, crouching, crawling, balancing, kneeling, pushing, and pulling. (AR 269.)

///

---

[2] As Plaintiff's assertions of error are limited to the ALJ's discrediting of the medical opinion of Christopher Cody, M.D. and alleged improper formulation of Plaintiff's physical RFC (*see* Docs. 14 & 16), only evidence relevant to those arguments is set forth in this Order.

## 2. Treating Physician Christopher Cody, M.D.

On February 20, 2015, Plaintiff presented to Dr. Cody for the results of a left knee x-ray and to obtain a refill of medication for depression. (AR 333.) The x-ray showed narrowing of the medial joint space with effusion. (AR 333.) Dr. Cody ordered a knee brace and prescribed Paxil for depression. (AR 335.)

X-rays of Plaintiff's spine, knees, and hips were performed on November 9, 2015. (AR 308–13.) Plaintiff's spinal (thoracic and lumbar) x-rays showed moderate degenerative changes (AR 308–09), and the x-rays of her knees were normal. (AR 310–11.) The x-rays of Plaintiff's hips showed mild degenerative changes. (AR 312–13.)

On December 5, 2015, Plaintiff presented to Dr. Cody to review her x-ray results and to assess a right chest wall port that had been recently placed to administer chemotherapy for the treatment of rectal cancer. (AR 299.) She was encouraged to exercise and given dietary management education, guidance, and counseling. (AR 302.)

Dr. Cody completed a "PHYSICAL Residual Functional Capacity [RFC][3] Medical Source Statement" on December 7, 2015. (AR 295–98.) He diagnosed Plaintiff with lumbar pain, bilateral hip osteoarthritis, bilateral knee osteoarthritis, and rectal carcinoma. (AR 295.) Dr. Cody noted Plaintiff's "most significant clinical findings" were limited joint motion and pain with motion. (AR 295.) He opined that Plaintiff could lift and carry up to 10 pounds occasionally, sit three hours in an 8-hour workday, and stand and walk one hour in an 8-hour workday. (AR 296.) Dr. Cody further opined that Plaintiff would require daily unscheduled breaks of 30 minutes before returning to work, would be "off-task" (unable to perform work and/or away from the work environment) more than 30%, and would be absent from work five days or more per month. (AR 297–98.)

///

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on January 21, 2014, and again on reconsideration on July 2, 2014.  (AR 64–80.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 85–96.)  At the hearing on May 26, 2016, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 6–44.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past relevant work as a cashier II, Dictionary of Operational Titles (DOT) code 211.462-010, which was unskilled and light exertional work with a specific vocational preparation (SVP)[4] of 2, and as a fast food worker, DOT code 311.472-010, which was unskilled and light exertional work with a SVP of 2.  (AR 45, 46.)  The ALJ asked the VE to consider a person who was capable of performing a light range of work eroded by the following limitations: climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling only occasionally; never climbing ropes, ladders, and scaffolds; no working at unprotected heights; avoiding concentrated exposure to moving mechanical parts; socially interacting with supervisors, coworkers, and the public only occasionally; and capable of understanding, remembering, and carrying out simple, routine, repetitive tasks using judgment limited to simple work-related decisions.  (AR 46–47.)  The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other work in the national economy such as marker, DOT code 369.687-026, unskilled and light exertional work, with 55,000 jobs available, and garment sorter, DOT code 222.687-014, light exertional work with a SVP of 2, with 90,000 jobs available in the national economy.  (AR 47–48.)

The VE further testified that a second hypothetical individual who had the limitations set forth in Dr. Cody's assessment would not be able to perform any jobs, and that a third hypothetical person who had to miss five days of work a month and be off task 30% of the time would also be unable to work.  (AR 48, 49.)  She testified that her testimony was consistent with the DOT.  (AR

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991).  Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id.*

48.)

**C.      The ALJ's Decision**

In a decision dated August 17, 2016, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 12–23.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 14–23.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since October 29, 2009, the alleged onset date (Step One).  (AR 14.)  At Step Two, the ALJ found Plaintiff's following impairments to be severe: multiple joint osteoarthritis, back pain, status-post rectal carcinoma, affective and anxiety disorders, and obesity.  (AR 14–15.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (Step Three).  (AR 15–16.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at Steps Four and Five.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b).  Specifically, she can lift and carry 20 pounds occasionally; 10 pounds frequently, sit 6 hours, and stand and walk 6 hours in an 8-hour workday.  She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but should never climb ladders, ropes or scaffolds and must avoid work at unprotected heights and concentrated exposure to moving mechanical parts.  In addition, she can perform simple routine repetitive tasks using judgment limited to simple work related decisions with occasional contact with supervisors, co-workers, and the public.

(AR 16–17.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 20.)

The ALJ found that Plaintiff was unable to perform her past relevant work (Step Four), but that, on the basis of the RFC assessment, she retained the capacity perform other work that existed in sufficient numbers in the national economy, specifically marker and garment sorter (Step Five).  (AR 21–22.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on February 6, 2018. (AR 4–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

## III.    LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent

steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [his] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*,

454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred in affording "little weight" to the opinion of treating physician Dr. Cody (*see* Doc. 14 at 7–8; Doc. 16 at 3–4) and in rejecting the push/pull limitation assessed by consultative examiner Dr. Georgis (*see* Doc. 14 at 5–7; Doc. 16 at 2–3).

The Commissioner counters that the ALJ properly evaluated Dr. Cody's opinion and did not commit harmful error by omitting the specific push/pull limitation from the RFC assessment and from the hypothetical to the VE. (*See* Doc. 16 at 5–6.)

///

**A.      The ALJ Erred in His Evaluation of Dr. Cody's Opinion**

      **1.      Legal Standard**

The weight given to medical source opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An ALJ may properly reject a treating physician's conclusions that are not supported by the treating physician's objective data or history. *See Tommasetti*, 533 F.3d at 1041; *Batson v. Comm'r of Social Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, an ALJ may not arbitrarily substitute his own judgment for competent medical opinion, make his own independent medical findings, or assess an RFC that is not supported by the medical evidence. *See Day v. Weinberger,* 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008)

("However, as a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'") (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, . . . and he must not succumb to the temptation to play doctor and make his own independent medical findings."). *Accord Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008) ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion.") (internal quotation marks and citations omitted); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

### 2. Analysis

Plaintiff's treating physician Dr. Cody opined that Plaintiff could lift and carry up to 10 pounds occasionally, sit three hours in an 8-hour workday, and stand and walk one hour in an 8-hour workday. (AR 296.) Dr. Cody further opined that Plaintiff would require daily unscheduled breaks of 30 minutes before returning to work, would be "off-task" (unable to perform work and/or away from the work environment) more than 30%, and would be absent from work five days or more per month. (AR 297–98.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Cody's opinion is contradicted by the opinion of the consulting examiner Dr. Georgis, who opined that that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and walk six hours out of an eight-hour day with normal breaks, can sit six hours in an eight-hour day, and can perform occasional climbing, stooping, crouching, crawling, balancing, kneeling, pushing, and pulling. (AR 269.) Thus, the ALJ was required to state "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Cody's opinion.

The record demonstrates that Dr. Cody examined and treated Plaintiff, reviewed her x-ray results, and, based on that information, concluded that Plaintiff had the limitations set forth in his RFC assessment. (*See* AR 298 (setting forth the items upon which Dr. Cody based his opinion).) However, the ALJ gave only "little weight" to Dr. Cody's opinion on the basis that it was "not

consistent" with the x-ray results, which showed "mild hip changes, no knee abnormalities, and only moderate lumbar changes."[5] (AR 18.) The ALJ's discussion overlooks that "[t]he subjective judgments of treating physicians are important, and properly play a part in their medical evaluations." *See, e.g., Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Instead, the ALJ, without assessment or opinion from any other medical source, arbitrarily substituted his own judgment and made his own independent medical finding that Dr. Cody's opinion was too restrictive based on raw medical data he is not qualified to interpret. *Padilla*, 541 F. Supp. 2d at 1106. In so doing, the ALJ erred. *See Day*, 522 F.2d at 1156; *Banks*, 434 F. Supp. 2d at 805. *Cf. Schols v. Astrue*, No. CV–10–253–CI, 2012 WL 710807, at *5–6 (E.D. Wash. Mar. 5, 2012) (finding error where the ALJ, based on his interpretation of x-ray results, "substitute[d] his own medical conclusions for that of two [treating] physicians").

## B.     The ALJ's Error Warrants Remand for Further Proceedings

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate

---

[5] This is the sole reason cited by the ALJ for her rejection of Dr. Cody's opinion. (*See* AR 18.) Although the Commissioner now attempts to defend the ALJ's decision by suggesting that Dr. Cody's opinion "did not contain any explanation of the basis of [his] conclusion" and was contradicted by the opinion examining physician (*see* Doc. 15 at 8–9), a reviewing court cannot affirm the denial of benefits based on a reason not stated or finding not made by the ALJ. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) ("Because the ALJ did not provide these explanations herself as a reason to reject [the treating doctor's opinion], the district court erred in looking to the remainder of the record to support the ALJ's decision, and we cannot affirm on those grounds."); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). The Commissioner's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is therefore unavailing.

award of benefits." *Benecke*, 379 F.3d at 593. *See also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016).

Having found that the ALJ failed to articulate specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion of Plaintiff's treating physician, the Court concludes that remand for further proceedings is warranted. *Cf. Schols*, 2012 WL 710807, at *7 (remanding for further proceedings). As Plaintiff concedes (*see* Doc. 14 at 8; Doc. 16 at 4), the error identified above can be remedied with further proceedings. On remand, the ALJ should address this error by properly evaluating the medical evidence, including the opinion of Plaintiff's treating provider, and re-assessing Plaintiff's functional limitations in light of that evaluation and the other medical evidence of record.

**C.      The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider the medical opinion evidence and re-assess Plaintiff's RFC, the Court need not address Plaintiff's allegation of error concerning the ALJ's present RFC assessment and its failure to account for certain limitations opined by Dr. Georgis. *Cf. Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments.").

## V.      CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Laurel C. Longoria and against Defendant Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **February 4, 2019**                          /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE

12